UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

Plaintiff,

v.

EDDIE JEROME MILLS,

Defendant.

No. 1:07-CR-0007
No. 1:07-CR-216 (2:06-CR-131)

Hon. Paul L. Maloney
U.S. District Judge

# AMENDED PLEA AGREEMENT

This constitutes the plea agreement between EDDIE JEROME MILLS, the United States Attorney's Office for the Western District of Michigan, and the United States Attorney's Office for the Northern District of Indiana (Hammond Division). The terms of the agreement are as follows:

1. The Defendant Agrees to Plead Guilty. The Defendant agrees to plead guilty to Counts One, Three, Five, Six and Seven of the Indictment in Case Number 1:07-CR-0007. The Defendant further agrees to plead guilty to Count Five of the Superseding Indictment in Case Number 1:07-CR-216 (2:06-CR-131 NDIN).

A. Counts One and Three of the Indictment in Case Number 1:07-CR-0007 and Count Five of the Superseding Indictment in Case Number 1:07-CR-216 (2:06-CR-131 NDIN) charge the Defendant with armed bank robbery in violation of Title 18, United States Code, Sections 2113(a), (d) and (f).

B. Counts Five and Seven of the Indictment in Case Number 1:07-CR-0007 charge the Defendant with armed credit union robbery in violation of Title 18, United States Code, Sections 2113(a), (d) and (g).

C. Count Six of the Indictment in Case Number 1:07-CR-0007 charges the Defendant with brandishing a firearm during a crime of violence in violation of Title 18, United States Code, Section 924(c).

2. The Defendant Understands the Crimes.

A. Armed Bank Robbery Counts. In order for the Defendant to be guilty of violating Title 18, United States Code, Sections 2113(a), (d) and (f), the following must be true: that the Defendant, by force, violence and intimidation, took money from tellers at a bank; that the Defendant, in taking the money from the tellers, assaulted and put in jeopardy the life of one or more employees of the bank by the use of a dangerous weapon, that is, a firearm; that the money the Defendant took belonged to, or was in the care, custody, control, management or possession of the bank; and that the deposits of the bank were at the time insured by the Federal Deposit Insurance Corporation.

B. Armed Credit Union Robbery Counts. In order for the Defendant to be guilty of violating Title 18, United States Code, Sections 2113(a), (d) and (g), the following must be true: that the Defendant, by force, violence and intimidation, took money from tellers at a credit union; that the Defendant, in taking the money from the tellers, assaulted and put in jeopardy the life of one or more employees of the credit union by the use of a dangerous weapon, that is, a firearm; that the money the Defendant took belonged to, or was in the care, custody, control, management or possession of the credit union; and that the deposits of the credit union were at the time insured by the National Credit Union Administration Board.

C. Brandishing a Firearm During a Crime of Violence Count. In order for the Defendant to be guilty of violating Title 18, United States Code, Section 924(c), the following must be true: that he knowingly and intentionally used and carried a firearm during and in relation to a crime of violence, to wit: credit union robbery, in that he brandished a firearm during said robbery.

The Defendant is pleading guilty because he is guilty of the charges described above.

3. The Defendant Understands the Penalties.

A. Armed Bank and Credit Union Robbery Counts . The statutory maximum sentence that the Court can impose for each violation of Title 18, United States Code, Sections 2113(a) and (d), is the following: a 25-year term of imprisonment; a 5-year period of supervised release; a fine of $250,000, and a mandatory special assessment of $100.

B. Brandishing a Firearm During Crime of Violence Count. The statutory sentence that the Court shall impose for a violation of Title 18, United States Code, Section 924(c) is the following: not less than seven years' imprisonment; up to five years of supervised release; a fine of up to $250,000; and a mandatory special assessment of $100.00. The statutory maximum sentence that the Court can impose for a violation of Title 18, United States Code, Section 924(c) is life imprisonment. By statute, any sentence imposed for a violation of Title 18, United States Code, Section 924(c) shall run consecutively to the sentence imposed for other counts.

C. Special Assessments. The Defendant agrees to pay the special assessment for Counts One, Three, Five, Six and Seven of the Indictment in Case No. 1:07-CR-0007 and for Count Five of the Superseding Indictment in Case No. 1:07-CR-216 (2:06-CR-131 NDIN) at or before the time of sentencing, unless the Defendant affirmatively demonstrates to the Court that he lacks the ability to pay.

4. The Defendant Understands Supervised Release. Supervised release is a period of time following imprisonment during which the Defendant will be subject to various restrictions and requirements. The Defendant understands that if he violates one or more of the conditions of any supervised release imposed, he may be returned to prison for all or part of the term of supervised release, which could result in the Defendant serving a total term of imprisonment greater than the statutory maximum stated above.

5. The Defendant Agrees to Provide Restitution. In accordance with Title 18, United States Code, Section 3663A, the Defendant agrees to provide restitution in the following amounts to the following victims of the offenses as well as full restitution to any other victims of the offenses:

A. $18,756.00 to Comerica Bank, 5080 West Main Street, Kalamazoo, Michigan;

B. $9,999.02 to Keystone Community Bank, 235 North Drake Road, Kalamazoo, Michigan;

C. $32,763.00 to Allegis Credit Union, 5713 Venture Park Drive, Kalamazoo, Michigan;

D. $102,149.53 to Grand Valley Co-op Credit Union, 4245 South Westnedge Avenue, Kalamazoo, Michigan; and

E. $44,010.33 to Sand Ridge Bank, 1600 Sagamore Parkway, Lafayette, Indiana.

6. Factual Basis of Guilt. The Defendant and the U.S. Attorney's Office for the Western District of Michigan agree and stipulate to the following statement of facts which need not be proven at the time of the plea or sentencing:

A. On December 2, 2005, the Defendant and his co-conspirator, Marvin Eugene Harris, Jr., entered the Comerica Bank, located at 5080 West Main Street, Kalamazoo, Michigan, and by force, violence and intimidation, took approximately $18,756 from tellers at said bank. The Defendant and his co-conspirator, in taking the money from the tellers, assaulted and put in jeopardy the life of one or more employees of the bank by the use of a dangerous weapon, that is, a firearm. The money the Defendant took belonged to, or was in the care, custody, control, management or possession of Comerica Bank, an institution the deposits of which are insured by the Federal Deposit Insurance Corporation.

B. On December 27, 2005, the Defendant and his co-conspirator, Jermone Anthony Barnes, entered the Keystone Community Bank, located at 235 North Drake Road, Kalamazoo, Michigan, and by force, violence and intimidation, took approximately $9,999 from tellers at said bank. The Defendant used, carried and brandished a firearm during the commission of this robbery by which he assaulted and put in jeopardy the life of one or more employees of the bank. The money the Defendant took belonged to, or was in the care, custody, control, management or possession of Keystone Community Bank, an institution the deposits of which are insured by the Federal Deposit Insurance Corporation.

C. On February 2, 2006, the Defendant and his co-conspirators, Jermone Anthony Barnes and Deandre L. Smith, entered the Allegis Credit Union, located at 5713 Venture Park Drive, Kalamazoo, Michigan, and by force, violence and intimidation, took approximately $32,763 from tellers at said credit union. The Defendant used, carried and brandished a firearm, a .45 caliber handgun, during the commission of this robbery by which he assaulted and put in jeopardy the life of one or more employees of the credit union. The money the Defendant took belonged to, or was

in the care, custody, control, management or possession of Allegis Credit Union, an institution the deposits of which are insured by the National Credit Union Administration Board.

D. On February 17, 2006, the Defendant and his co-conspirator, Marvin Eugene Harris, Jr., entered the Sand Ridge Bank, located at 1600 Sagamore Parkway, Lafayette, Indiana, and by force, violence and intimidation, took approximately $44,010 from tellers at said bank. The Defendant used, carried and brandished a firearm during the commission of this robbery by which he assaulted and put in jeopardy the life of one or more employees of the bank. The money the Defendant took belonged to, or was in the care, custody, control, management or possession of Sand Ridge Bank, an institution the deposits of which are insured by the Federal Deposit Insurance Corporation.

E. On March 17, 2006, the Defendant and his co-conspirator, Rodney Shamon Allen, entered the Grand Valley Co-op Credit Union, located at 4245 South Westnedge Avenue, Kalamazoo, Michigan, and by force, violence and intimidation, took approximately $102,149 from tellers at said credit union. The Defendant used, carried and brandished a firearm during the commission of this robbery by which he assaulted and put in jeopardy the life of one or more employees and customers of the credit union. The money the Defendant took belonged to, or was in the care, custody, control, management or possession of Grand Valley Co-op Credit Union, an institution the deposits of which are insured by the National Credit Union Administration Board.

7. The Defendant Agrees To Cooperate. The Defendant agrees to fully cooperate with the U.S. Attorney's Office, the Federal Bureau of Investigation (FBI), and any other law enforcement agency in their investigation of the charges contained in the Indictments as well as the investigation of crimes over which they have actual or apparent jurisdiction. The Defendant's cooperation will

consist of all steps needed to uncover and prosecute such crimes, including, but not limited to, providing investigators with a full, complete and truthful statement concerning the Defendant's knowledge of any and all criminal activity of which he is aware; truthfully answering investigators' questions; meeting with prosecutors before testifying; truthfully testifying before grand juries and in any court proceedings; and providing all relevant tangible evidence in the Defendant's possession or under the Defendant's control, including, but not limited to, objects, documents, and photographs. The Defendant's obligation to cooperate under this paragraph is an affirmative one and includes the obligation to voluntarily come forward with any and all information which the Defendant should reasonably know will assist in the investigation of other criminal activity. The Defendant will neither commit nor assist others in the commission of any criminal offense during the course of his cooperation with the United States. The Defendant will submit to polygraph examination(s) upon request. The Defendant's obligation under this paragraph is a continuing one, and shall continue after sentencing until all investigations and prosecutions in which the Defendant's cooperation is deemed relevant by the U.S. Attorney's Office have been completed.

8. The Promises of the United States Attorney's Office:

A. Dismissal of other charges. The U.S. Attorney's Office for the Western District of Michigan agrees to move to dismiss Counts Four and Eight of the Indictment in Case No. 1:07-CR-0007 and Counts One, Six, and Seven of the Superseding Indictment in Case No. 1:07-CR-216 (2:06-CR-131 NDIN) against the Defendant at the time of sentencing.

B. On acceptance of responsibility. The U.S. Attorney's Office for the Western District of Michigan agrees not to oppose the Defendant's request for a two-level reduction of his offense level for acceptance of responsibility under § 3E1.1(a) of the United States Sentencing

Guidelines ("the Guidelines"), provided the Defendant qualifies under the Guidelines, and if the Court finds his adjusted offense level is 16 or more and awards the Defendant this two-level reduction, the United States will also move at the time of sentencing for an additional one-level reduction because the Defendant accepted responsibility sufficiently early in the case for the government to avoid preparing for trial. The U.S. Attorney's Office, however, reserves the right to object to Defendant's request if it subsequently learns of conduct by the Defendant that is inconsistent with the criteria set forth in the Commentary to Section 3E1.1.

C. On the use of cooperation information. The U.S. Attorney's Office also agrees that information provided by the Defendant through the Defendant's proffer(s), and any information provided pursuant to the Defendant's promise to cooperate as described in this agreement, will not be used by the government to enhance the Defendant's sentence pursuant to the Guidelines § 1B1.8 and subject to the terms of the written proffer agreement entered into between the parties. It is expressly understood, however, that such information may be used by the government at sentencing if the Defendant takes a position at sentencing that contradicts information provided by the Defendant pursuant to this agreement or any proffer agreement.

9. The Sentencing Guidelines Apply. The Defendant understands that, although the United States Sentencing Guidelines (the "Guidelines") are not mandatory, the Court must consult the Guidelines and take them into account when sentencing the Defendant. The Defendant understands that the Court, with the aid of the presentence report, will determine the facts and calculations relevant to sentencing. The Defendant understands that the Defendant and the Defendant's attorney will have the opportunity to review the presentence report and to make objections, suggestions, and recommendations concerning the calculation of the Guideline range and

the sentence to be imposed. The Defendant further understands that the Court shall make the final determination of the Guideline range that applies in this case, and may impose a sentence within, above, or below the Guideline range, subject to the statutory minimum and maximum penalties described elsewhere in this Agreement. The Defendant further understands that disagreement with the Guideline range or sentence shall not constitute a basis for withdrawal of the plea.

10. Waiver of Constitutional Rights. By pleading guilty, the Defendant gives up the right to persist in a plea of not guilty and the right to a speedy and public trial by jury or by the Court. As a result of the Defendant's guilty plea, there will be no trial. At any trial, whether by jury or by the Court, the Defendant would have had the following rights:

a. The right to the assistance of counsel, including, if the Defendant could not afford an attorney, the right to have the Court appoint an attorney to represent the Defendant.

b. The right to be presumed innocent and to have the burden of proof placed on the Government to prove the Defendant guilty beyond a reasonable doubt.

c. The right to confront and cross-examine witnesses against the Defendant.

d. The right, if the Defendant wished, to testify on the Defendant's own behalf and present evidence in opposition to the charges, including the right to call witnesses and to subpoena those witnesses to testify.

e. The right not to be compelled to testify, and, if the Defendant chose not to testify or present evidence, to have that choice not be used against the Defendant.

By pleading guilty, the Defendant also gives up any and all rights to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

11. Waiver of Appeal and Collateral Attack. The Defendant understands that the law affords him the right to appeal the sentence imposed. Acknowledging this, the Defendant knowingly waives the right to appeal any sentence which is at or below the maximum of the guideline range as determined by the Court. The Defendant retains the right to appeal a sentence above the guideline range. This waiver is in exchange for the concessions made by the United States Attorney's Office in this plea agreement. The Defendant also waives the right to challenge such a sentence and the manner in which it was determined in any collateral attack, including but not limited to, a motion brought under Title 28, United States Code, § 2255. This agreement does not affect in any way the right of the U.S. Attorney's Office to appeal the sentence imposed by the Court.

12. The Court is not a Party to this Agreement. The Defendant understands that the Court is not a party to this agreement and is under no obligation to accept any recommendation by the United States Attorney's Office or the parties regarding the sentence to be imposed. The Defendant further understands that, even if the Court ignores such a recommendation or imposes any sentence up to the maximum established by statute, the Defendant cannot, for that reason, withdraw his guilty plea, and he will remain bound to fulfill all of his obligations under this agreement. The Defendant understands that no one – not the prosecutor, the Defendant's attorney, or the Court – can make a binding prediction or promise regarding the sentence the Defendant will receive, except that it will be within the statutory minimum and maximum.

13. This Agreement is Limited to the Parties. This agreement is limited to the United States Attorney's Office for the Western District of Michigan and the United States Attorney's Office for the Northern District of Indiana (Hammond Division), and cannot bind any other federal, state or local prosecuting, administrative or regulatory authority. This agreement applies only to crimes committed by the Defendant. This agreement does not apply to or preclude any past, present or future forfeiture or civil actions.

14. Breach of the Agreement. If the Defendant breaches any provision of this agreement, including any promise of cooperation, whether before or after sentencing, the United States shall have the right to terminate this agreement, or deny any and/or all benefits to which the Defendant would otherwise be entitled under the terms of this agreement. In the event that the United States elects to terminate this agreement, the agreement shall be considered null and void, and the parties shall return to the same position they were in prior to the execution of this agreement, as though no agreement ever existed. In such an event, the Defendant shall remain liable for prosecution on all original charges, and the United States shall be free to bring such additional charges as the law and facts warrant. The Defendant further agrees to waive and forever give up his right to raise any claim that such a prosecution is time-barred if the prosecution is brought within one (1) year of the breach that gives rise to the termination of this agreement.

15. This is the Complete Agreement. This agreement has been entered into by both sides freely, knowingly, and voluntarily, and it incorporates the complete understanding between the parties. No other promises have been made, nor may any additional agreements, understandings or conditions be entered into unless in a writing signed by all parties or on the record in open court.

CHARLES R. GROSS
United States Attorney
Western District of Michigan

9/18/07
Date

ELISA CASTROLUGO
Assistant United States Attorney

DAVID A. CAPP
United States Attorney
Northern District of Indiana

9-17-07
Date

BERNARD VAN WORMER
Assistant United States Attorney

I have read this agreement and carefully discussed every part of it with my attorney. I understand the terms of this agreement, and I voluntarily agree to those terms. My attorney has advised me of my rights, of possible defenses, of the sentencing provisions, and of the consequences of entering into this agreement. No promises or inducements have been made to me other than those contained in this agreement. No one has threatened or forced me in any way to enter into this agreement. Finally, I am satisfied with the representation of my attorney in this matter.

9-12-07
Date

EDDIE JEROME MILLS
Defendant

I am EDDIE JEROME MILLS' attorney. I have carefully discussed every part of this agreement with my client. Further, I have fully advised my client of his rights, of possible defenses, of the sentencing provisions, and of the consequences of entering into this agreement. To my knowledge, my client's decision to enter into this agreement is an informed and voluntary one.

9-12-07
Date

RODERICK C. PORTER
Attorney for Defendant